IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

DOMONIQUE LEE JENSEN,              )
                                   )
            Plaintiff,             )
                                   )
                                   )   CIV-13-1009-HE
v.                                 )
                                   )
CAROLYN W. COLVIN,                 )
  Acting Commissioner of Social    )
  Security Administration,         )
                                   )
            Defendant.             )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed her application on September 30, 2009 (protective filing date), alleging that she became disabled on April 24, 2007, due to post-traumatic stress disorder ("PTSD"), bipolar disorder with psychotic features, agoraphobia, irritable bowel syndrome ("IBS"), and

1

colitis. (TR 155, 179). Plaintiff was 30 years old at the time she filed her application. Plaintiff had a twelfth grade education and military training, and she previously served in the Air Force from May 2, 2001 until April 24, 2007, when she was discharged for medical reasons. (TR 179, 185).

The medical evidence in the record reflects that Plaintiff was hospitalized in October 2006 for treatment of depression with a history of self-mutilation and auditory and visual hallucinations, although Plaintiff admitted she had stopped taking her psychotropic medications one month before her admission. (TR 497). A consultative psychological examiner noted that Plaintiff reported an episode of child sexual abuse and that she needed counseling for PTSD and marital difficulties. (TR 524-526). At the time of her discharge on June 30, 2006, Plaintiff was stable on mood-stabilizing medications and she was assessed with a GAF of 45 to 50.[1] (TR 516-517).

The record reflects that on April 24, 2007, Plaintiff was awarded disability benefits by the Department of Veterans Affairs for PTSD, depression, and bipolar disorder. (TR 616-617). Plaintiff saw Dr. Gunda for medication management between April 2008 and

---

[1] The diagnosis of mental impairments "requires a multiaxial evaluation" in which Axis I "refers to the individual's primary clinical disorders that will be the foci of treatment," Axis II "refers to personality or developmental disorders," Axis III "refers to general medical conditions," Axis IV "refers to psychosocial and environmental problems," and Axis V "refers to the clinician's assessment of an individual's level of functioning, often by using a Global Assessment of Functioning (GAF), which does not include physical limitations." Schwarz v. Barnhart, No. 02-6158, 2003 WL 21662103, at *3 fn. 1 (10th Cir. July 16, 2003)(unpublished op.)(citing the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM IV)(4th ed. 1994), pp. 25-32). "A GAF score of 41-50 indicates serious symptoms or serious impairment in social, occupational, or school functioning, such as inability to keep a job." Pisciotta v. Astrue, 500 F.3d 1074, 1076 n. 1 (10th Cir. 2007)(quotation, brackets, and ellipsis omitted).

November 2011. In the majority of these treatment sessions, Dr. Gunda noted Plaintiff's report that she was doing fine and feeling good.

In October 2011, a Veterans Administration ("VA") staff psychiatrist, Dr. Gutierrez, evaluated Plaintiff and noted that she had a history of two psychiatric admissions in 2006 and a third one in 2010 "during her divorce when she just felt overwhelmed" and was "not medicated." (TR 613-614). At the time of her evaluation, she was taking one anti-anxiety medication but did not take it regularly and sometimes only took two doses per month. She was planning to continue her education, enjoyed making jewelry, and was interested in attending recreational therapy through the VA. (TR 614). The diagnostic assessment was PTSD and borderline personality disorder with a GAF of 65. (TR 614). Dr. Gutierrez noted that in spite of Plaintiff's personality difficulties she had "been able to function well" and "was active in applying what she had learned" from therapy. (TR 614). She was a "caring mother" and acted "in her child's best interest." (TR 614).

In a hearing conducted before Administrative Law Judge Levine ("ALJ") on December 13, 2011, Plaintiff testified that she was receiving medical care, including psychiatric treatment, through the VA. She was not in therapy but saw a psychiatrist for medication management. Plaintiff stated she experienced anxiety around people and did not like to be in public, although she provided care for her minor child and was able to have "minimal contact with people," including attending events at her daughter's school. Plaintiff testified she accommodated her anxiety by shopping at times when fewer people were present, such as while her daughter was in kindergarten, and she used "coping techniques"

3

to reduce her anxiety. Plaintiff testified she took her daughter to school, helped her daughter complete homework, sometimes went to movies or out to eat, had a close friend, and did not take anti-anxiety medication every day or take pain medication. She indicated she did not trust people, was paranoid, and had problems with unusual fears of bathrooms, showers, being alone in the dark, and looking out of windows, all of which she related to a history of childhood abuse. Plaintiff also described hip pain due to a 2009 motor vehicle accident ("MVA"), IBS, and colitis. A medical expert ("ME") testified at the hearing as well as a vocational expert ("VE").

The ALJ denied Plaintiff's application at step five of the well-established sequential evaluation process for determining disability. The ALJ found that (1) Plaintiff had not engaged in substantial gainful activity since April 24, 2007; (2) Plaintiff suffered from severe impairments of bipolar disorder, PTSD, borderline personality disorder, and IBS; (3) none of these impairments met or equaled the severity of a listed impairment; and (4) Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels except that Plaintiff "cannot tolerate exposure to unprotected heights; she can tolerate only minimal and superficial contact with coworkers; and she cannot tolerate any interaction with the general public." (TR 23).

Relying on the VE's testimony concerning the exertional and nonexertional requirements of Plaintiff's previous jobs, the ALJ found that Plaintiff's RFC precluded the performance of any of these jobs. Reaching the fifth and final step of the sequential evaluation process, the ALJ found that Plaintiff was not disabled within the meaning of the

4

Social Security Act because there were jobs available within the economy that she could perform in light of her RFC for work and vocational characteristics, including the jobs of laundry worker, order picker, and dishwasher. The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 404.981; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. Evaluation of Medical Source Opinions

Plaintiff contends that the ALJ erred in evaluating the medical source opinions of a consultative examiner, Dr. Gordon, and her treating psychologist, Dr. Robbins. Defendant

5

Commissioner responds that the ALJ properly and adequately considered these opinions and therefore the Commissioner's decision should be affirmed.

Plaintiff underwent a post-hearing consultative evaluation conducted by Dr. Gordon, a psychologist, on January 17, 2012. (TR 791-794). Dr. Gordon noted in his report of the evaluation that Plaintiff described a history of PTSD and degenerative disc disease. She was taking an anti-anxiety medication as needed but no other medications. In a mental status examination, Dr. Gordon noted that Plaintiff exhibited an anxious and depressed mood, average level of intelligence, short term memory impairment, and significant psychological disturbance. Dr. Gordon posited that "she would not be able to pass judgment in a work situation or communicate comfortably in a social circumstance." (TR 792). In a summary of the evaluation, which included psychological testing, Dr. Gordon noted that Plaintiff was "basically an emotionally dependent and ineffectual individual" who "is exceptionally suspicious of other people and avoids as much interpersonal contact as possible accordingly. [She] has problems with panic attacks with agoraphobia which is one of her symptoms of [PTSD]. She also has difficulty with intrusive thoughts, reliving experiences, flashbacks and nightmares. [She] is an exceptionally avoidant individual who has a history of being hurt emotionally and fears further emotional pain. Additionally she is suffering from a moderate level of depression secondary to [PTSD]. Finally, [her] short term memory was assessed as impaired." (TR 793). The diagnostic assessment was PTSD, moderate to severe, and major depressive disorder, moderate, due to PTSD. (TR 273).

Dr. Gordon also completed a written Medical Source Statement concerning Plaintiff's

work-related functional abilities. In this statement, Dr. Gordon assessed Plaintiff as having "moderate" limitations in her abilities to understand, remember, and carry out simple instructions, "moderate" limitations in her ability to make judgments on simple work-related decisions, "marked" limitations in her abilities to understand, remember, and carry out complex instructions, and "marked" limitations in her ability to make judgments on complex work-related decisions. (TR 795). Dr. Gordon also opined that Plaintiff would have "marked" limitations in her ability to interact appropriately with the public and "moderate" limitations in her ability to interact appropriately with supervisors and coworkers and respond appropriately in usual work situations and to changes in routine work settings. (TR 796).

In the ALJ's decision, the ALJ expressly considered Dr. Gordon's report of his consultative evaluation of Plaintiff and Dr. Gordon's Medical Source Statement. (TR 21). The ALJ reasoned that Dr. Gordon's opinion was given great weight "to the extent consistent with the evidence of record. The examiner's findings do not reflect the level of impairment alleged by the claimant. However, the examiner did find that she has significant limitations in social interaction." (TR 21). The ALJ later revisited Dr. Gordon's report and Medical Source Statement in connection with the step four RFC determination and noted that "[a]lthough the examiner indicated the claimant would have difficulty to make [sic] appropriate workplace decisions and communicating effectively in social settings, the evidence indicates that she retains the ability to perform unskilled work and tolerate minimal/superficial contact with coworkers and no interaction with the general public." (TR

25).

The ALJ is required to consider all medical opinions in the record. 20 C.F.R. §404.1527(c). An ALJ must also discuss the weight assigned to each medical opinion. Id. §404.1527(e)(2)(ii). There are specific factors that the ALJ should consider in determining what weight to give to a medical opinion. Id. § 404.1527(c).

Plaintiff concedes that the ALJ did not totally discount Dr. Gordon's opinion, but Plaintiff asserts that the ALJ should have better explained what portions of the doctor's opinion were found to be inconsistent with other evidence in the record. Plaintiff refers to Dr. Gordon's statement in the report of his consultative evaluation of Plaintiff that she "would not be able to pass judgment in a work situation or communicate comfortably in a social circumstance." However, this statement was obviously flushed out in Dr. Gordon's more specific findings set forth in the accompanying Medical Source Statement.

The ALJ's RFC finding incorporates Dr. Gordon's opinions in the Medical Source Statement concerning Plaintiff's mental functional abilities. The RFC finding limits Plaintiff to unskilled work, which would coincide with Dr. Gordon's opinion that she would be markedly limited in her ability to understand, remember, or carry out complex instructions, and to make judgments on complex-work related decisions and she would be moderately limited in her ability to respond appropriately in usual work situations and to changes in routine work settings. The ALJ's RFC finding includes limitations in Plaintiff's social functional abilities that also coincide with Dr. Gordon's opinion that Plaintiff would be markedly limited in her ability to interact appropriately with the public and moderately

8

limited in her ability to interact appropriately with supervisors and coworkers. Under these circumstances, the ALJ was not required to discuss Dr. Gordon's consultative report and Medical Source Statement in any greater detail. No error occurred with respect to the ALJ's evaluation of Dr. Gordon's consultative report and Medical Source Statement.

Plaintiff makes a passing reference to the reports of the agency's medical consultants. But the ALJ stated in the decision that the medical consultants' opinions were "considered in accordance with the requirements of 20 C.F.R. § 404.1527; and SSRs 96-2p, 96-5p, and 96-6p." (TR 25). Plaintiff argues that these opinions were rendered prior to her third psychiatric hospitalization in April 2010 and before Dr. Gordon's consultative examination of Plaintiff, but Plaintiff does not make a coherent argument of error in regard to the ALJ's consideration of these opinions.

In a Mental RFC form dated December 8, 2009, Dr. Lochner, Ph.D., opined that Plaintiff "can perform simple and some complex tasks," "can relate to supervisors and peers on a superficial work basis," "cannot relate to the general public," and "can adapt to a work situation." (TR 403). The ALJ incorporated these findings in the RFC determination, and the ALJ's discussion of the agency's medical consultant's opinion was adequate under these circumstances.

Plaintiff also argues that the ALJ did not discuss a nebulous statement in an Air Force staff psychiatrist's narrative summary dated November 3, 2006, that Plaintiff would be likely to be noncompliant with her medications due to bipolar disorder. (TR 560-562). This report preceded the date on which Plaintiff alleged she became disabled by several months, and the

9

staff psychiatrist's report was directed to Plaintiff's military disability rating and did not posit that Plaintiff would be permanently unable to perform all work activities. The ALJ did not err in failing to expressly consider the staff psychiatrist's statement in the November 2006 report.

Plaintiff next contends that the ALJ erred in her consideration of the medical opinions of Plaintiff's treating psychologist, Dr. Robbins. When considering the opinion of a disability claimant's treating physician, the ALJ must follow a specific procedure. Generally, an ALJ must give the opinion of an acceptable treating source controlling weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). Where an ALJ finds that a treating physician's opinion is not entitled to controlling weight, the ALJ must decide "whether the opinion should be rejected altogether or assigned some lesser weight." Pisciotta v. Astrue, 500 F.3d 1074, 1077 (10th Cir. 2007). "Treating source medical opinions not entitled to controlling weight 'are still entitled to deference' and must be evaluated in light of the factors in the relevant regulations, 20 C.F.R. §§ 404.1527 and 416.927." Newbold v. Colvin, 718 F.3d. 1257, 1265 (10th Cir. 2013)(quoting Watkins, 350 F.3d at 1300). An opinion that a claimant is disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner.]" Castellano v. Sec'y of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994).

Dr. Robbins completed a Mental Status Form dated October 22, 2009. (TR 386). On

this form, Dr. Robbins responded to questions concerning Plaintiff's activities and functional abilities. With respect to Plaintiff's daily activities and interests, Dr. Robbins stated that Plaintiff "gets her daughter up [and] ready for school, attends appointments on time (doctors, therapy, physical therapy), assists her father when needed. Since being involved in therapy with me, she has attempted to increase social interaction, build interests and hobbies." Regarding Plaintiff's prognosis, Dr. Robbins stated that Plaintiff "manages well with support from therapy," although her prognosis was "guarded" and she will "probably manage symptoms throughout her life." As to Plaintiff's work-related functional abilities, Dr. Robbins stated that Plaintiff "can carry out complex instructions on an independent basis when she is not experiencing a hypomanic or depressed ([with] hallucinations) state. She cannot, however, manage during one of these states." Plaintiff "would probably not do well in a work environment that necessitated interaction with others or involved her in any stressful duties." (TR 386). Dr. Robbins notes a diagnostic assessment employing the well-known axis system[2] of bipolar disorder type I with most recent episode depressed with psychotic features (axis I), borderline personality disorder (axis II), IBS and allergies (axis III), with recent separation from husband (axis IV), and GAF as of October 22, 2009, of 55

---

[2]The diagnosis of mental impairments "requires a multiaxial evaluation" in which Axis I "refers to the individual's primary clinical disorders that will be the foci of treatment," Axis II "refers to personality or developmental disorders," Axis III "refers to general medical conditions," Axis IV "refers to psychosocial and environmental problems," and Axis V "refers to the clinician's assessment of an individual's level of functioning, often by using a Global Assessment of Functioning (GAF), which does not include physical limitations." Schwarz v. Barnhart, No. 02-6158, 2003 WL 21662103, at *3 fn. 1 (10th Cir. July 16, 2003)(unpublished op.)(citing the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM IV)(4th ed. 1994), pp. 25-32).

(axis V).

With this Mental Status Form, Dr. Robbins submitted a letter also dated October 22, 2009, in which Dr. Robbins stated that she had been treating Plaintiff since January 2008 in weekly or twice weekly therapy sessions for bipolar disorder type I. (TR 387). Dr. Robbins described in the letter a number of depressive symptoms and stated that Plaintiff had a "debilitating disability," although Plaintiff had not been hospitalized during her outpatient therapy with Dr. Robbins. (TR 387).

The ALJ expressed consideration of Dr. Robbins' Mental Status Form and accompanying letter. The ALJ rejected the suggestion in Dr. Robbins' letter that Plaintiff was disabled due to her mental impairment. The ALJ reasoned that the GAF score of 55 assessed by Dr. Robbins indicated only moderate impairment in social, occupational, or school functioning and the doctor had also "failed to document the specific findings that support her conclusion." (TR 20).

Plaintiff first complains that the ALJ did not specifically discuss the opinions rendered in Dr. Robbins' Mental Status Form. However, Plaintiff does not assert, and it is difficult to discern, how those findings conflict with the ALJ's RFC assessment. Although Dr. Robbins indicated on the Form that Plaintiff's ability to function would be reduced during hypomanic or depressed "states," Dr. Robbins provided no information concerning the frequency with which such "states" occurred or even that such "states" had occurred during her treatment of Plaintiff. Dr. Robbins did not submit progress notes of her treatment of Plaintiff.

12

Further, the ALJ's RFC determination included limitations that are consistent with Dr. Robbins' assessment on the Mental Status Form that Plaintiff "would probably not do well in a work environment that necessitated interaction with others or involved her in any stressful duties." (TR 386). Under these circumstances, it was not necessary for the ALJ to discuss in the decision the weight given to the opinions set forth in the Mental Status Form.

Plaintiff next contends that the ALJ did not provide adequate reasons for rejecting Dr. Robbins' statement in her letter suggesting that Plaintiff was disabled. However, as the ALJ reasoned, Dr. Robbins' letter described numerous symptoms but provided no specific information as to dates on which the symptoms were present, and Dr. Robbins' GAF assessment and opinions concerning Plaintiff's functional limitations set forth in the Mental Status Form were inconsistent with her opinion in the letter.

Moreover, in significant conflict with Dr. Robbins' opinion that Plaintiff's symptoms were severe and debilitating, Dr. Gunda, Plaintiff's treating psychiatrist, provided office notes of treatment of Plaintiff for approximately the same time period between April 8, 2008 and January 26, 2010. These office notes include specific findings concerning Plaintiff's affect, mood, speech, thought process, thought content, judgment, insight, attention/concentration, memory, attitude, appearance, and motor activity at the time of each monthly or bi-monthly appointment. (TR 347-360). Dr. Gunda prescribed medications for treatment of Plaintiff's bipolar disorder. The office notes indicate Plaintiff generally exhibited no abnormal mood or other symptoms when Plaintiff was compliant with her medications. In June 2009, Plaintiff reported she had purchased her father's home in Florida

and was renting the home. (TR 350). In August 2009, Plaintiff reported she had voluntarily stopped taking her psychotropic medications. (TR 349). In subsequent visits through January 2010, Plaintiff did not request to restart her medications and said she felt good. Dr. Gunda's subsequent treatment notes for June 2010 through November 2010, indicated Plaintiff was "stable on her medications" and compliant and generally exhibited no abnormal mental symptoms. (TR 624-628).

The ALJ also recognized in the decision that Dr. Gunda's records of treatment of Plaintiff reflected Plaintiff was inconsistent with following prescribed treatment and sometimes stopped taking her prescribed medications when she was feeling good. The ALJ did not err in analyzing Dr. Robbins' opinion and provided reasons that are well supported by the record for rejecting the opinion.

IV. Analysis of VA Disability Rating

Plaintiff contends that the ALJ's analysis of Plaintiff's VA disability rating is faulty. A disability determination by another agency is not binding on the Social Security Administration. 20 C.F.R. § 404.1504. However, a disability rating is "evidence that the ALJ must consider and explain" in the decision why the VA disability determination was not persuasive. Grogan v. Barnhart, 399 F.3d 1257, 1262-63 (10th Cir. 2005). The ALJ must therefore discuss the significance of the disability determination. Id. at 1263.

In this case, the ALJ recognized in the decision that Plaintiff had been determined to be 100 % disabled by the Department of Veterans Affairs as of April, 24, 2007, and also recognized that the VA's disability rating was not binding on the agency under the pertinent

regulations. (TR 19-20). Further, the ALJ recognized that all of the evidence in the record including the disability rating must be evaluated. (TR 20). Later in the decision, the ALJ again recognized that the VA had determined Plaintiff was 100 % disabled but that the agency was not bound by this decision and stated that the VA's disability rating was not given controlling or significant weight. (TR 25).

The ALJ determined that the evidence as a whole, which the ALJ summarized in the decision, indicated Plaintiff retained the capacity to perform work activities with specific mental and environmental limitations. This determination is well supported by the record.

For instance, the ALJ pointed to ME Dr. Adam's testimony at the hearing. Dr. Adams testified that a review of Plaintiff's medical record showed that Plaintiff had some "very serious" mental health issues which required hospitalizations but "she gradually appeared to get better" and had improved to the point that in January 2010 she was not taking psychotropic medication and she was still not taking any psychotropic medication at the time of the hearing other than one anti-anxiety medication. (TR 46-47). Dr. Adams testified that "at one time" Plaintiff's symptoms were "substantial," as reflected in Dr. Robbins' letter, but that she had improved, that some functional abilities were preserved, and that Plaintiff's VA treatment records indicated she continued to improve. (TR 47-48).

Dr. Adams noted that Dr. Robbins had opined that Plaintiff would be capable of handling complex instructions on an independent basis unless she was in a hypomanic or depressed state, and Dr. Adams posited that the record did not show Plaintiff had been in such a state since her treatment with Dr. Robbins began in April 2008. The ALJ gave

"significant weight" to Dr. Adams' opinion on the basis that it was consistent with the medical evidence in the record. (TR 21).

As the ALJ recognized in the decision, the medical record showed that Plaintiff was briefly hospitalized in April 2010 following a suicide attempt. Plaintiff subsequently reported to Dr. Gutierrez that the attempt was related to marital difficulties and that at the time of her attempt she had not taken any psychotropic medications for over a year. (TR 638-640). The ALJ pointed to Dr. Gutierrez's assessment that Plaintiff's GAF was 65 at the time of his evaluation in October 2011, which indicated only mild symptoms. (TR 21).

The ALJ provided reasons that are well supported by the record for declining to give the VA's disability rating controlling or significant weight. Because the Commissioner's ultimate decision is supported by substantial evidence in the record, the decision should be affirmed.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before      August 14th       , 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's

16

recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ____25th____ day of ____July____, 2014.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE